RECEIVED
SEP - 2 2009
TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

| BUSINESS FIRST BANK | * | CIVIL ACTION NO. 6:08-1857 |
|---|---|---|
| VERSUS | * | JUDGE RICHARD T. HAIK, SR. |
| EAGLE MARINE TOWING, INC., et al. | * | MAGISTRATE JUDGE HILL |

## REASONS FOR JUDGMENT

Business First Bank (hereinafter referred to as the "Bank") filed the instant lawsuit against Eagle Marine Towing, Inc., Alan Fein, and Victor Fein based upon the alleged non-payment of two(2) promissory notes executed by one of the defendants, Eagle Marine Towing, Inc. The Bank filed the instant motion for partial summary judgment on the basis that it is entitled to judgment as a matter of law as to the affirmative defenses raised by the Defendants.

## FACTUAL BACKGROUND

On August 9, 2007, Eagle Marine executed a promissory note made payable to the order of The Bank in the principal amount of $1.2 million for the purchase and refurbishing of the *M/V AM Thompson* and *M/V Mama Lere*. Defendants, Alan Fein and Victor Fein, personally guaranteed all indebtedness of Eagle Marine to The Bank by executing Commercial Guarantees in favor of The Bank.

Beginning on September 7, 2007, The Bank extended a $400,000 line of credit to Eagle Marine for working capital. In connection with this line of credit, Eagle Marine executed a Promissory Note made payable to The Bank in the principal amount of $400,000 on December 12, 2007 (hereinafter referred to as "Note Number 2"). The note contains a maturity date of June 12, 2008 and Eagle Marine remains the owner and holder of both notes.

Additionally, Eagle Marine granted The Bank a security interest in the *AM Thompson* and

*Mama Lere* by executing two Preferred Ship Mortgages in favor of The Bank covering the two ships. Eagle Marine granted The Bank additional security interests by way of a Commercial Security Agreement and UCC Financing Statement. All documents were executed by James S. Coleman on behalf of Eagle Marine, who is the President of Eagle Marine and a duly authorized representative of the company.

Eagle Marine has, since, allegedly defaulted on both loans and a loan balance of $1.2 million remains unpaid.

## **LAW AND ANALYSIS**

*- SUMMARY JUDGMENT STANDARD*

Summary judgment is proper when the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FRCP 56(c). The summary judgment procedure is not "a disfavored procedural shortcut;" rather, it is "an integral part of the federal rules as a whole, which are designed to secure the just, speedy and inexpensive determination of every action." The party seeking summary judgment satisfies its burden under Rule 56 of the Federal Rules of Civil Procedure by demonstrating that there is an absence of evidence to support the non-moving party's case. After a proper motion for summary judgment is made, the non-movant must set forth specific facts showing that there is a genuine issue for trial. The non-movant must produce more than a mere scintilla of evidence in its favor, and may not rest upon the allegations or denials of its pleadings.

The Defendants raised two affirmative defenses that are the subject of this motion for partial summary judgment:

> (1) Business First "was negligent in obtaining a survey of the collateral in which the survey grossly overvalued the collateral and greatly underestimated the cost of repairs. Defendants plead the

affirmative defense of contributory negligence.

(2) Business First "allowed funds from Eagle Marine for repairs for the MAMA LERE one of the ships used as collateral. The bank knew that funds were being misapplied and were actually monies received to pay the fuel for the AM Thompson. The bank knew this was supposed to be a direct pass through and should not have been used for any other purpose. Plaintiff also allowed accounts receivables to go to working capital as opposed to pay on the loans. Further, plaintiff failed to ascertain that sufficient accounts receivable were available for money that they were advancing. Therefore, defendants plead the affirmative defense of contributory negligence and equitable estoppel."

I. *Defendants' Affirmative Defense of Negligently Obtained Appraisal of Vessels*

The Bank alleges that it acted reasonably in selecting an appraiser and, further, that any alleged negligence of the appraiser is not a defense to payment. In support, the Bank offers that the appraiser was not randomly selected. The Bank argues that it selected a marine appraiser upon recommendation of its attorney. After having contacted the potential appraiser, TMA, the Bank determined that TMA had sufficient knowledge, experience, professionalism and competency to appraise the *AM Thompson* and *Mama Lere*.

The Bank contends that no evidence exists to support the notion that TMA was negligent in surveying the *AM Thompson* and *Mama Lere*. It argues that defendants, regardless, should not be allowed to refuse payment based on the negligence of a third party. The Bank alleges that the defendants "voiced no concerns over the valuation of the vessels or repair estimation prior to the advancement of funds."

Defendants did not address this issue in their opposition, other than to suggest without citing authority that TMA was an agent of the Bank, and have not put forth any evidence to contradict the facts alleged by plaintiff. Therefore, as there is no opposition with respect to the

viability of this affirmative defense, no genuine issue of fact exists and the Bank's motion for partial summary judgment is granted on this issue.

II. *Defendants' Affirmative Defense of Misapplication of accounts receivable funds*

The Bank argues that the defendants cannot argue, as a defense to payment, that the Bank misused Eagle Marine's funds to pay for repairs instead of for repayment of the loan, because the then-president of Eagle Marine, James Coleman, was authorized to disburse monies contained in Eagle Marine's accounts. Further, the Bank contends that it had no grounds to refuse or restrict Coleman's use of Eagle Marine's funds, and, as such, defendants' disagreement over the expenditures authorized by Coleman is an internal matter within Eagle Marine.

Defendants counter by arguing that they were led to believe, by the Bank, that funds generated from accounts receivable were to be used strictly for the repayment of the loans and that they agreed to personally guaranty the notes based upon the Bank's representation to them. Further, defendants aver that they never would have executed the personal guaranties had they known that the use of the funds would be for repairs and working capital rather than repayment of the loan. In support, defendants offer the Affidavits of Alan Fein and Victor Fein, which purport to verify the allegations of fact contained in the opposition, namely that the personal guaranties were based upon an oral agreement of sorts, that the money received by the plaintiff from the pledged accounts receivables would only go towards repaying the loan.

Note number 2 provides, in pertinent part:

> "Advances under [Note No. 2], as well as directions for payment
> from Borrower's accounts, may be requested orally or in writing by
> Borrower or by an authorized person...Borrower agrees to be liable
> for all sums...advanced in accordance with the instructions of an
> authorized person."

Defendants do not contest the fact that their then- President, James Coleman, had authorization to use Eagle Marine's funds. Defendants simply argue, without supporting evidence, that the Bank should not have allowed the use of these funds in such manner as Coleman used them. Thus, there is no issue of fact as to whether Coleman was authorized to make use of the accounts receivable funds.

Defendants argue that the alleged oral representations of the Bank should be considered an oral agreement enforceable against the Bank and, thus, a valid defense to payment.

The Business Loan Agreement, executed simultaneously with Note number 2 on December 12, 2007 by Eagle Marine, provides:

> "Borrower has applied to lender for a loan in the aggregate principal amount of $400,000.00 for the following purpose: increase renewal for working capital."

The personal guaranties executed by the Defendants provides:

> "No Oral Agreement. This Guaranty is the final expression of the agreement between Lender and Guarantor and may not be contradicted by evidence of any prior oral agreement or of a contemporaneous agreement between Lender and Guarantor."

The personal guaranties further provide:

> "No amendment, modification, consent or waiver of any provision of this Guaranty, and no consent to any departure by Guarantor therefrom, shall be effective unless the same shall be in writing signed by a duly authorized officer of Lender..."

When, in the absence of a legal requirement, the parties have contemplated a certain form, it is presumed that they do not intend to be bound until the contract is executed in that form. La. C.C. Art. 1947. The Fifth Circuit has held that, while Louisiana law bars parol evidence to evaluate contractual intent when words of contract are clear and explicit and lead to

no absurd consequences, it allows for admissibility of parol evidence when written agreement is manifestly incomplete and is not intended to constitute the entire agreement between parties. *Condrey v. SunTrust Bank of Georgia,* 429 F.3d 556, 563 (5th Cir. 2005)(citing LSA-C.C. art. 2046). Only when terms of written agreement are susceptible to more than one interpretation, or there is uncertainty or ambiguity as to its provisions, or the intent of parties cannot be ascertained from language employed, parol evidence is admissible to clarify ambiguity or to show intention of parties. *Id.* Furthermore, a contemporaneous oral agreement, or understanding between the parties, that is not made part of the written contract does not qualify as an exception to the parol evidence rule. *Id* (citing *First Nat'l Bank of Jefferson Parish v. Campo,* 537 So.2d 268, 270-71 (La.Ct.App.1988)).

"An integration or merger clause negates the legal introduction of parole evidence; it is a provision in a contract to the effect that the written terms may not be varied by prior or oral agreements because all such agreements have been merged into the written document." *Condrey v. SunTrust Bank of Georgia* 429 F.3d 556, 564 (5th Cir. 2005)(citing *Black's Law Dictionary* 683 (6th ed. 1983)). "Louisiana contract law explains that integration clauses must be given effect where the contract properly reflects the parties' intentions" and parole evidence must be excluded in such cases. *Id.*

Louisiana law, as well as the personal guaranties provided in part, above, prohibit any oral modification to Defendants' contractual obligations as personal guarantors of Eagle Marine's indebtedness. Defendants offer no evidence of intent by either party to be bound by anything other than the contracts as expressly written. Instead, defendants only argue that they were misled, by oral representation, as to the terms of the agreement as written and signed by the parties. As a result, no genuine issue of material fact exists with respect to the issue of

defendants' affirmative defense of misapplication of accounts receivable. Defendants are bound by the loan agreements as written.

## CONCLUSION

For all of the above and foregoing reasons, no genuine issues of material fact exist with respect to the viability of the defendants' affirmative defenses.

Accordingly, Business First Bank's Motion for Partial Summary Judgment [Court Doc. #38] is **GRANTED**.

THUS DONE AND SIGNED on this the 28th day of August, 2009.

JUDGE RICHARD T. HAIK, SR.
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA